ROGERS, J.
 

 This suit was filed on May 29, 1923, by the Massachusetts Protective Association, Inc., against Elijah P. Ferguson and his' wife, to obtain the cancellation of a certain health and accident policy issued by the plaintiff in favor of the defendant Ferguson on February 23,1921. The principal sum under the policy is $5,000', and it provides for a weekly indemnity of $50 during total disability for a maximum period of 60 weeks.
 

 Plaintiff predicates its action for the cancellation of the policy on the alleged false statements contained in the assured’s application therefor when he said that he never had any sickness or ailment involving his lungs, although, as a matter of fact, at that time and prior thereto, these organs were affected by tuberculosis; and, further, when he failed to disclose that he was and had been a sufferer from chronic dysentery.
 

 Defendant denies that he had made any false statements in his application for the policy, and avers that all his statements therein were made in good faith. As additional defenses, he pleads that the policy, having been issued without any medical examination, was governed by the provisions of Act 97 of 1908, under which plaintiff must be held to have waived its right to cancel the contract on the grounds alleged in its petition ; and, further, that plaintiff was estopped to deny the validity of the policy by paying him certain indemnities that had accrued thereunder and by accepting premiums thereon after his disability had arisen.
 

 Defendant, in reconvention, sets up his total disability, beginning November 1, 1921, from pulmonary tuberculosis, and the continuance of such disability for more than the maximum of 60 weeks. He prays for judgment for $3,000 as the indemnity due him under the terms of the policy, and, additionally, for a like sum and for reasonable attorney’s fees as penalties under the provisions of Act 310 of 1910.
 

 The court below rejected plaintiff’s demands, and gave defendant Ferguspn judgment in reconvention for $3,000, disallowing, however, his claim for double indemnity and attorney’s fees. Plaintiff appealed from the judgment, and defendant answered the ap
 
 *276
 
 peal, asking that the amount of the judgment be doubled and that he be allowed attorney’s fees.
 

 The questions and answers appearing in Ferguson’s application for the policy that are pertinent to plaintiff’s charge of fraud and deception are as follows, viz.:
 

 “12. I-Iave you ever had any sickness or ailment involving the heart, brain, kidneys or ■lungs or'any form of rheumatism? No.”
 

 “14. What sickness or accidents have you had during the past 5 years. What physicians have you consulted during that period? Influenza, 1918, 3 days. Army.
 

 “(b) Are you now in sound health and bodily condition? Yes.”
 

 At the inception of the trial of th.e case, defendant objected to all testimony seeking to rescind the policy for the alleged misrepresentations, on the ground that plaintiff was legally estopped under the provisions of Act 97 of 1908. The objection was overruled, and the testimony admitted.
 

 The evidence in the record shows that the defendant. Eerguson, who is 39 years of age, served in the United States Army for the greater part of the World War, receiving his discharge in August, 1919. In the following month he went to work for the Sinclair Oil Company as a tool dresser in the Homer oil field. He continued in this employment for about a year, leaving it in the latter part of 1920 to do similar work for one George O. Baird. ■ Defendant was working for Mr. Baird on February 15, 1921, at Athens, La., when the policy herein was issued. In May, 1921, defendant filed a small claim under its provisions for rectal trouble, which claim, after some correspondence between the contracting parties, was paid; and the company attached a rider to the policy continuing it in force, but absolving itself from all liability for any disease of the rectum. Defendant continued working for Mr. Baird until August or September, 1921. Due to pulmonary tuberculosis, he became disabled in the month of November, 1921. A claim for the disability was seasonably presented to the defendant company, and, after an extensive correspondence, was disallowed. Subsequently, the company instituted the present suit to annul the insurance contract.
 

 The policy was issued without any medical examination of the insured. Plaintiff has not shown, nor attempted to show, any collusion between its local agent and the defendant to dispense with such examination in order to permit the latter to reap the benefit of the legislative act. In this respect, the testimony shows that in the afternoon of the day on which the application was signed, while defendant was visiting the drug store of Nat A. Martin, in the village of Athens, he was introduced by Mr. Martin, the proprietor of the establishment, to the local agent of the plaintiff company. After some conversation between the parties, the company’s agent suggested to defendant the advisability of his taking out an indemnity policy. The suggestion was favorably received and acted upon by the defendant, because, as he testified, he realized he was engaged in a dangerous occupation and might at any moment be accidentally hurt. A physician having his office in the drug store was present at the time, and there were several other physicians residing in the village, so that it would have been an easy matter to have had the defendant medically examined if the general business custom of the company demanded it, or if such examination was specifically required in the case of the defendant.
 

 Plaintiff’s charge of fraud and deception must rest entirely, therefore, upon the alleged knowledge of defendant that at the time he signed the application for insurance he was afflicted with pulmonary tuberculosis and his concealment of that fact, and his further concealment of the fact that he was also a sufferer from chronic dysentery..
 

 
 *278
 
 The application which plaintiff was required to sign does not specifically require information concerning the disease known, generically, as dysentery. The only ailments inquired about are a constitutional disease and ailments involving certain vital organs of the human body. Defendant had no reason to believe, when he made application for the policy herein, that he had not fully recovered from an attack of dysentery which he suffered while serving in the army. If he recalled that illness at all, in the absence of a direct question bearing thereon, it is probable that he did not consider it of sufficient importance to mention in the application. His action in so doing, however, cannot be considered as fraudulent. Cunningham v. Penn Mut. Life Ins. Co., 152 La. 1023, 95 So. 110. The fact that the disease recurred three months after the issuance of the policy does not affect the legal situation. And, admittedly, the cause of defendant’s disability is not dysentery but pulmonary tuberculosis.
 

 Defendant answered in the negative the direct question of whether he ever had any lung trouble. Doubtless the question recalled to his memory his attack of influenza and its association in the public mind wütk diseases of the respiratory organs; hence the reference in his answers to that particular illness as conveying information of importance to the insurance company. The evidence shows, undoubtedlj', that defendant was in absolute good faith in stating that he never had any ailment of the lungs. It was -not until November, 1921, about nine months after the policy was issued, when he became ill and applied for treatment at the Veterans’ Hospital, at Alexandria, La., that he learned, for the first.time, he was afflicted with pulmonary tuberculosis.
 

 .Therefore the facts developed on the trial of the case, which we have succinctly stated, are a sufficient answer to the charge of fraud and deception which plaintiff alleges wére practiced by defendant in his application for the policy herein. Another, and insuperable, bar to the demand of the plaintiff for the cancellation of the policy on the ground of misrepresentation is to be found in our statutory law itself. The policy was issued without the requirement of any medical examination of the defendant, although, according to his uncontradicted testimony, he was in no haste for the policy, and there was plenty of time to make such examination. Since the plaintiff company had ample opportunity to ascertain the true condition of defendant’s health but failed to do so, under the provisions of Act 97 of 1908 it cannot claim the forfeiture of the policy on the ground that defendant’s answers to" the questions set forth in his application were untrue.
 

 Our decision in Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464, is peculiarly applicable to the issue involved in the instant case. The insurance contract therein sued on was entered into without a medical examination of the insured. The defense of the insurance company was that in his application for the policy the insured had made a false statement to a material fact relative to his health. Applying Act 97 of 1908 to the case, we said, 161 La. at page 234 of the opinion (108 So. 465), that by its terms, “and in the absence of any allegation of fraud, it must be presumed that the company waived its right to claim a forfeiture of the policy on the ground that the insured did not make true and full answers in his application, as to his health, in that respect.”
 

 Plaintiff argues, however, that neither the statute (Act 97 of 1908) nor the decision (Brown v. Continental Casualty Co.) is appropriate because of the allegation of fraud in its petition.
 

 The obvious purpose of the statute is to eliminate from judicial consideration all allegations of fraud by insurance companies when called upon to comply with their insur
 
 *280
 
 anee contracts issued without any medical examination in regard to certain preliminary-matters of which, through its agent, it has acquired, or might reasonably have acquired, knowledge prior to entering into the contract. According to the plain provisions of the legislative act, an insurance company cannot claim, in such cases, the forfeiture of the policy on the ground of misrepresentation. To permit it to do so by merely alleging that the insured is guilty of fraud in failing to make true and full answers in his application for insurance would nullify the statutory provisions. We had no such intention in saying, in Brown v. Continental Casualty. Co., that the statutory presumption of waiver of the company’s right to claim a forfeiture of the policy applied “in the absence of any allegation of fraud.” The fraud we had in mind there was such fraud which, if 'it had prior knowledge of its perpetration, would preclude an insurance company from entering into the contract at all. In the instant case, the insurance company contracted with full knowledge of our statutory law, and is, therefore, in no position to urge fraud against the claim of the defendant, who is invoking its beneficial provisions.
 

 On considering defendant’s reconventional demand, we find that his disability is not disputed by the plaintiff insurance company. The disability began November 1, 1921, and continued far beyond the maximum period of 60 weeks as fixed in the insurance contract. The plaintiff denies liability on the ground that under the terms of the policy no recovery is permitted defendant because he contracted the disease from which he is suffering while in the military service in time of war.
 

 The clause in question was inserted, no doubt, in the standard form of insurance contract in consequence of and during the World War, and has remained as a formal part of the contract since that time.
 

 The universal rule is that the provisions of an insurance contract are to be strongly construed against the insurer. A liberal interpretation is not permitted of clauses in the contract exempting or limiting the insurer’s liability. It is elementary, also, that the insurer carries the burden of establishing the facts which relieve or limit his liability.
 

 As we appreciate the testimony, it is not conclusively shown therein that the insured contracted the disease causing his disability while he was in the military service. Hostilities between the warring countries ceased on November 11, 191S, and the insured was discharged from the army on August 23, 1919. None of the physicians who testified in the ease had examined the insured prior to the latter date, and none of them were able to definitely state that he contracted his disease while serving in the military force of the nation. One of these witnesses, a reputable physician of the city of Shreveport, examined the insured in the early part of October, 1921, and found no evidence that he was suffering from tuberculosis. In the latter part of November, 1921, when the insured was admitted to the Veterans’ Hospital, at Alexandria, it was discovered that he had tuberculosis, but that the disease was only “moderately advanced.” This was the first intimation had by the insured, who for 15 months after he left the army was engaged in laborious and exposed work in the oil fields, that he was afflicted with pulmonary tuberculosis.
 

 Plaintiff makes much of the fact that the defendant Ferguson is drawing disability compensation from the federal government, arguing, from the circumstance, that the disease causing such disability necessarily arose while defendant was in the military service of the country. It by no means follows that such is the ease, in view of the liberal policy adopted by the federal government towards disabled ex-service men. The governmental
 
 *282
 
 regulation concerning active pulmonary tuberculosis is that where the disease is of 10 per cent, degree and has developed within two years from the date of the sufferer’s separation from active service, it shall be considered as incident to service and entitle him to the benefits provided by the War Risk Insurance Act as amended. The fact that the government grants the right of hospitalization and compensation in such cases as incidents to service and not solely as having been contracted in actual service is not controlling of the rights flowing to the respective parties from a private contract entered into betw,een them.
 

 We do not think that this is a case calling for the imposition of double indemnity and attorney’s fees on the insurance company under the provisions of Act 310 of 1910. Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt. It cannot be said that plaintiff’s contentions in this case were wholly unfounded or unreasonable.
 

 For the reasons assigned, the judgment appealed from is affirmed, at appellant’s cost. '